UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------X

SIMCHA PODOLSKI, individually and on behalf of others similarly situated,

      Plaintiff,

-against-

U.S. BANCORP, ELAN FINANCIAL SERVICE and CARDMEMBER SERVICE,

      Defendants.

-----------------------------------------------------------------X

Civil Action No.:

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT And FAIR DEBT COLLECTIONS PRACTICES ACT**

Plaintiff, SIMCHA PODOLSKI ("Plaintiffs"), on behalf of himself and others similarly situated, by and through their attorneys, Edward B. Geller, Esq., P.C., Of Counsel to M. Harvey Rephen & Associates, P.C., as and for its Complaint against the Defendant, U.S. BANCORP, ELAN FINANCIAL SERVICE and CARDMEMBER SERVICE (hereinafter referred to as "Defendant(s)"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## INTRODUCTION/PRELIMINARY STATEMENT

1. Plaintiff brings this action on his own behalf for damages and declaratory and injunctive relief arising from the Defendant's violation(s) under Title 47 of the United States Code, §227 commonly known as the Telephone Consumer Protection Act (TCPA) and from the Defendant's violation(s) of §1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA").

2. Defendants are subject to, and required to abide by, the laws of the United States and the State of New Jersey, which include the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, et seq. ("TCPA") and its related regulations, including 47 C.F.R. §64.1200 ("TCPA Regulations"), as well as the opinions, regulations and orders issued by the Federal Communications Commission to implement and enforce the TCPA, the telemarketing regulations issued by the Federal Trade Commission, 16 C.F.R. §310.4(d)(2).

3. Plaintiff is a "consumer" as defined by the FDCPA, 15 USC § 1692a(3).

4. Defendants are "debt collectors", as defined and used in the FDCPA under 15 U.S.C. § 1692a(6).

## PARTIES

5. Plaintiff SIMCHA PODOLSKI is a resident of the State of New Jersey, residing at 106 Reagan Court, Lakewood, New Jersey.

6. Defendants U.S. BANCORP and ELAN FINANCIAL SERVICE are Minnesota corporations with a common address located at 800 Nicollet Mall, Minneapolis, MN 55402.

7. Defendant CARDMEMBER SERVICE is an assumed name for an entity with an address at 824 North 11th Street, St. Louis, Missouri 63101-1016.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 USC §1331, as well as 15 USC §1692 et seq. and 28 U.S.C. §2201. If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. §1367(a).

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## ALLEGATIONS FOR CLASS ACTION

10. Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of themselves and all persons/consumers, along with their successors-in-interest, who have received similar debt collection notices and/or letters/communications from Defendants which, as alleged herein, are in violation of the TCPA and the FDCPA, as of the date of Plaintiff's Complaint (the "Class"). Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant. Upon information and belief, hundreds of persons have received debt collection notices and/or letters/communications from Defendant, which violate various provisions of the TCPA and FDCPA.

11. This Class satisfies all the requirements of FRCP Rule 23 for maintaining a class action.

12. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds of persons have received debt collection notices and/or letters/communications from Defendant, which violate various provisions of the TCPA and FDCPA.

13. The debt collection notices and/or letters/communications from Defendant, received by the Class, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer".

14. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common

questions of law and fact include, without limitation: (i) Whether Defendant violated various provisions of the TCPA; (ii) Whether Plaintiff and the Class have been injured by Defendant's conduct; (c) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and, (iv) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

15. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

16. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the TCPA, as codified by Title 47, Code §227.

17. The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

18. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

19. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

20. Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

21. Absent a class action, the Class members will continue to suffer losses borne from Defendant's breaches of their statutorily protected rights as well as monetary damages, thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

22. Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

23. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "22" herein with the same force and effect as if the same were set forth at length herein.

24. On or about October 1, 2015, one or both Defendants began communicating with Plaintiff by means of telephone calls to Plaintiff's mobile telephone number 732 232 1073.

25. By October 19, 2015, Plaintiff had received numerous calls.

26. When Plaintiff answered his telephone, he heard silence on the other end, convincing him that said calls were made by an automatic dialing system.

27. Defendants' calls originated from number 877 838 4347.

28. Defendant's number and the name "U.S. BANK" appeared on the caller identification screen of recipients and Plaintiff.

29. On October 19, 2015, placed a telephone call to the aforementioned number and was connected to a recorded greeting which stated: "Thank you for calling Cardmember Service."

30. Plaintiff was presently connected to a representative who identified himself as "Dominic" of Cardmember Service.

31. Plaintiff requested of "Dominic" that calls from Defendant to his telephone number of 732 232 1073 implemented from an from automated dialing system cease and desist.

32. Despite Plaintiff's request, Defendant's auto-dialed calls continued.

33. Plaintiff thereafter placed a second call to Defendants at number 877 838 4347 and was connected to a representative who identified herself as "Katrina" from Cardmember Service.

34. Plaintiff notified "Katrina" that he was receiving calls which had nobody at the other end when he answered and wished to know if they were autodialed calls.

35. "Katrina" confirmed that Defendants' calls were autodialed.

36. When Defendants calls persisted, Plaintiff contacted the undersigned legal representative.

37. Defendant thereafter placed a third call to Defendants and was connected to a representative of Defendant who identified himself as "Cecil" from Cardmember Services.

38. Plaintiff requested that "Cecil" provide Plaintiff with address and contact information so that his attorney could communicate with Defendants.

39. "Cecil" provided information and stated that he needed to read something to Plaintiff.

40. "Cecil" then proceeded to read a prepared recitation in a rapid manner, racing through the speech, running words and sentences together, stating: "By providing us with a telephone number for a cellular number or wireless device including a number that you later convert to a cellular number you essentially consent to receive a communication including but not limited to pre-recorded or artificially [unintelligible] calls, text message and calls made by an automatic dialing system from us and our affiliates, this [unintelligible] to telephone number you provide to us now and in the future…"

41. Plaintiff then interrupted "Cecil" to say that he wanted to switch numbers because he didn't want any calls from an automatic dialer.

42. When Defendant's calls to Plaintiff's telephone persisted, Plaintiff noticed that some calls were identified by caller identification as originating from "JIMBOREE" and some from "US BANK" and the same number was calling.

43. Plaintiff then requested that a business associate, Sion Abadi, place a telephone call to Defendants to determine who was calling him despite his request to no longer receive calls.

44. On February 23, 2016, Sion Abadi placed a telephone call to Defendants and was connected to a representative who identified himself as "Mark from Cardmember Service."

45. Mr. Abadi conferenced Plaintiff into the telephone call and Plaintiff confirmed that Mr. Abadi could communicate with "Mark" on his behalf.

46. Mr. Abadi thereafter attempted to discover if Defendant CARDMEMBER SERVICE was a separate entity from Defendant US BANK, asking: "Is this US BANK?"

47. "Mark" replied: "Yes, this is US BANK."